UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| HARBOR COLD STORAGE, LLC, | CASE NO. C09-1252JLR |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| STRAWBERRY HILL, LLC, | |
| Defendant. | |

## I. INTRODUCTION

This matter comes before the court on Defendant Strawberry Hill, LLC's ("Strawberry Hill") motion to dismiss (Dkt. # 12) and Plaintiff Harbor Cold Storage, LLC's ("Harbor") motion for preliminary injunction (Dkt. # 3). Having considered the motions, as well as all papers filed in support and opposition, and having heard oral argument, the court GRANTS the motion to dismiss (Dkt. # 12) for lack of personal jurisdiction and DENIES the motion for preliminary injunction (Dkt. # 3).

## II. BACKGROUND

This action is a landlord-tenant dispute over the terms of two lease agreements (collectively, "Leases"). Strawberry Hill leases a warehouse and shop space ("Premises") located in Dutch Harbor, Alaska, to Harbor. (Compl. (Dkt. # 1) ¶ 3.2.) Harbor operates a cold storage facility on the Premises wherein it stores fishing bait for sale in the course of its business. (*Id.*) The core disagreement between the parties arises from Harbor's attempt to extend the terms of the Leases and Strawberry Hill's response that Harbor's exercise of the option to extend was invalid because Harbor allegedly owes substantial unpaid utility charges dating back to 1999, as well as additional fees for use of an "overhead door." (Compl. ¶¶ 3.8, 3.11, 3.13.)

Strawberry Hill is an Alaska limited liability company formed in November 2008, and its sole member is Steve Zelener, an Alaska resident. (Compl. ¶ 1.2; Third Declaration of Steve Zelener ("Third Zelener Decl.") (Dkt. # 37) ¶ 5.) Harbor is a Washington limited liability company. (Compl. ¶ 1.1.) All of Harbor's members are Washington residents. (*Id.*)

**A. History of the Leases**

This action focuses on two leases. Strawberry Hill and Harbor were not the original parties to the Leases. First, in September 1999, Factory Trawler Supply, Inc. ("FTS"), as landlord, entered into a lease agreement ("1999 Lease") with T. Abbott Fisheries, Inc. ("Abbott"), as tenant. (Compl. ¶ 3.3 & Ex. 1 (1999 Lease).) In January 2004, Abbott assigned its rights under the 1999 Lease to Harbor. (Compl. ¶ 3.3.)

Second, in May 2004, FTS entered into an agreement ("2004 Lease") to lease additional space in the warehouse to Harbor. (Compl. ¶ 3.4 & Ex. 2 (2004 Lease).)

**B. Sale of Leases & Bankruptcy Court Approval**

In 2006, FTS filed for bankruptcy in the Bankruptcy Court for the Western District of Washington. (Compl. ¶ 3.5.) In February 2008, FTS's Alaska real estate agent approached Mr. Zelener, the principal of Seventh & E, LLC ("Seventh"), in Anchorage, Alaska, to ascertain whether Seventh was interested in purchasing FTS's assets. (Declaration of J. Todd Tracy ("Tracy Decl.") (Dkt. # 26) ¶ 2; *see* Second Declaration of Markos Scheer ("Sec. Scheer Decl.") (Dkt. # 24) ¶ 6 & Ex. 5.) Later in 2008, when in Seattle for personal reasons, Mr. Zelener spent an hour with FTS's manager to discuss the proposed purchase. (Third Zelener Decl. ¶ 4; Sec. Scheer Decl., Ex. 5.) This was the only time Mr. Zelener or any representative of Seventh was in Washington in connection with the sale. (Third Zelener Decl. ¶ 4.) Over the following months, FTS and Seventh engaged in additional negotiations via telephone, email, and facsimile. (Sec. Scheer Decl., Ex. 5.) The sale of FTS's assets ultimately closed in Alaska. (Third Zelener Decl. ¶ 6; Sec. Scheer Decl., Ex. 5.)

On July 17, 2008, FTS and Seventh entered into a purchase agreement ("Agreement"). (Third Zelener Decl. ¶ 3; *see* Declaration of Markos Scheer ("Scheer Decl.") (Dkt. # 6), Ex. 1 (Agreement).) In the Agreement, FTS represented and warranted that FTS "and its tenants are in compliance with respect to all leases . . . ." (Agreement § 5(f).) The Agreement also permitted Seventh to assign its interest to another party. (Third Zelener Decl. ¶ 5.) In November 2008, Mr. Zelener formed

Strawberry Hill to be an assignee of one of the leasehold interests purchased by Seventh. (*Id.*) Mr. Zelener is the principal owner and manager of both Seventh and Strawberry Hill. (*Id.*)

In the order approving the sale, the bankruptcy court provided that "all Leases and Executory Contracts will be considered current and not in default for any reason arising out of or relating to events occurring before the date this Order is entered or because of the assignment to [Seventh] pursuant to The Agreement . . . ." (Scheer Decl., Ex. 1 ("Bankr. Order") at 10.) Additionally, the bankruptcy court ordered that it retained "jurisdiction to, inter alia, interpret and enforce the terms and provisions of this Order and [t]he Agreement . . . ." (Bankr. Order at 9; *see also id.* at 14-15.)

**C.   Current Lease Dispute**

The Leases provide that Harbor "shall be responsible for the actual cost of all utility service attributed to the Leased Premises." (1999 Lease ¶ 8; 2004 Lease ¶ 8.) The Leases further provide that the landlord may require Harbor "to make reasonable modifications to the Premises (including, without limitation, installation of metering equipment) or to utilize alternative electrical power sources in order to accommodate its electricity needs." (1999 Lease ¶ 8; 2004 Lease ¶ 8.) Harbor contends that the Premises are simply warehouse space, with no water, garbage, or heat provided. (Declaration of David Shoemaker ("Shoemaker Decl.") (Dkt. # 5) ¶ 3.) In 1999, Abbott connected the Premises to separately-metered electrical power when it first moved into the Premises. (Shoemaker Decl. ¶¶ 4, 7.) Harbor asserts that during the time Abbott and Harbor

operated out of the premises, they have never paid to the landlord utility expenses or other building expenses, nor were they asked to do so. (Shoemaker Decl. ¶ 19.)

The Leases were scheduled to end on September 25, 2009. (Compl. ¶ 3.7.) Harbor alleges that it properly exercised its option to extend the Leases for additional 10-year periods. (*Id.*; Shoemaker Decl. ¶ 13 & Ex 4.) In response, however, Strawberry Hill asserted that Harbor's exercise of the option to extend the terms of the Leases was not valid because Harbor had allegedly failed to pay certain utility costs and was in default under the Leases. (Shoemaker Decl. ¶ 14 & Ex. 5.) Strawberry Hill alleges that Harbor owes it substantial unpaid utility charges dating back to 1999. (Compl. ¶ 3.8.)

On September 3, 2009, Harbor initiated this action by filing a complaint for injunctive and declaratory relief. (*See generally* Compl.) Harbor seeks a determination that it does not owe additional utility charges, that it does not owe additional rent for use of the overhead door, and that it properly exercised its option to extend the terms of the Leases. (Compl. § V.) Additionally, Harbor requests that the court enjoin Strawberry Hill from evicting Harbor from the Premises for its alleged failure to pay utility charges and additional rent for the overhead door. (*Id.*)

**D.  Alaska Eviction Proceedings**

On September 18, 2009, Strawberry Hill filed an eviction action in Alaska state court. Strawberry Hill seeks to evict Harbor from the Premises. Harbor subsequently removed the action to the United States District Court for the District of Alaska.

# III. ANALYSIS

**A. Motion to Dismiss for Lack of Jurisdiction**

A federal court may rule on the merits of a case only if it has both personal jurisdiction and subject-matter jurisdiction. *Potter v. Huges*, 546 F.3d 1051, 1060 (9th Cir. 2008). On a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proof to demonstrate that jurisdiction is appropriate. *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009); *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1008 (9th Cir. 2002). "Although the burden is on the plaintiff to demonstrate that the court has jurisdiction over the defendant, in the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell*, 575 F.3d at 985 (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). The court must accept uncontroverted allegations in the plaintiff's complaint as true and resolve conflicts between the facts contained in the parties' affidavits in favor of the plaintiff. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

1. <u>Personal Jurisdiction</u>

Where, as here, no applicable federal statute governs personal jurisdiction, the court must apply the law of the state in which the district court sits, namely, Washington law. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc). Because Washington's long-arm statute is coextensive with federal due process requirements, the jurisdictional analyses under Washington law and federal law merge together. *See Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82

(Wash. 1989). "[A] court may exercise personal jurisdiction over a defendant consistent with due process only if he or she has 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Yahoo!*, 433 F.3d at 1205 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Unless a defendant's contacts with a state are so substantial, continuous, and systematic as to establish "general jurisdiction," which is not alleged here, the court may exercise only "specific jurisdiction," *i.e.*, jurisdiction predicated on the relationship between the defendant's contacts with the forum and the plaintiff's claim. *Id*.

The Ninth Circuit follows a three-prong test to determine whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)). "The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citations omitted).

### i. *Purposeful Availment*

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Boschetto*, 539 F.3d at 1017 (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)). The defendant need not be physically present or have physical contacts with the forum so long as his efforts are "purposefully directed" toward forum residents. *Id.*; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). The court's evaluation must be practical and pragmatic, not rigid and formalistic. *Boschetto*, 539 F.3d at 1016. The formation of a contract with an out-of-state defendant is not, standing alone, sufficient to establish minimum contacts in the other party's home forum. *Id.* Rather, to determine whether a nonresident defendant has purposefully established minimum contacts with the forum state by contracting with another party, the court examines factors such as prior negotiations, contemplated future consequences, the terms of the parties' contract, and the parties' course of dealing. *Id.* (citing *Burger King*, 471 U.S. at 479). Finally, to be relied upon to establish minimum contacts, a contract must have a "substantial connection" with the forum state. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).

Harbor first argues that FTS's contacts with Washington are attributable to Strawberry Hill as a result of the assignment. (Resp. (Dkt. # 23) at 13-18.) Although the parties do not identify a Ninth Circuit decision addressing this issue, the court is persuaded by the opinions of those courts that have addressed the issue that an assignee does not automatically step into the shoes of the assignor for purposes of personal

ORDER- 8

jurisdiction; instead, personal jurisdiction must be based on the assignee's own acts. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003) (collecting cases); *Moxie Java Int'l, LLC v. Cornucopia Beverages, Inc.*, No. CV-07-535-S-BLW, 2009 WL 187893, at *3-4 (D. Idaho Jan. 23, 2009); *Lobatto v. Berney*, No. 98 CIV 1984 SWK, 1999 WL 672994, at *8 (S.D.N.Y. Aug. 26, 1999) ("Jurisdiction over an assignee must be based on the assignee's own acts and does not arise solely because the assignor may be subject to personal jurisdiction."). Harbor has not identified any reason to deviate from this rule on the facts of this case. Therefore, the court will not attribute FTS's contacts with Washington to Strawberry Hill for purposes of personal jurisdiction.

Next, Harbor argues that Strawberry Hill purposefully availed itself of the privilege of doing business in Washington based on Seventh's negotiation for and purchase of the Leases from FTS.[1] (Mot. to Dismiss at (Dkt. # 12) 14-18.) The court is not persuaded. In evaluating this argument, the court is mindful of the Ninth Circuit's instruction that the "evaluation of the jurisdictional significance of a defendant's contract or other business in the forum is not rigid and formalistic, but rather practical and pragmatic." *Boschetto*, 539 F.3d at 1016. Here, neither Strawberry Hill nor Seventh deliberately reached out to Washington to initiate the purchase of the Leases; instead,

---

[1] For present purposes, the court will assume that Seventh's actions are attributable to Strawberry Hill. Strawberry Hill challenges this assumption. (Reply (Dkt. # 36) at 7-8.) Unlike the relationship between FTS and Seventh and Strawberry Hill, the relationship between Seventh and Strawberry Hill has not been fully developed for evaluation by the court, and genuine issues of fact remain. Of particular significance, Mr. Zelener is the principal of both Seventh and Strawberry Hill, and he formed Strawberry Hill in connection with Seventh's purchase of FTS's assets. The court therefore will treat Seventh's actions as attributable to Strawberry Hill.

FTS's Alaska real estate agent approached Mr. Zelener in Alaska. The subsequent negotiations between FTS and Seventh occurred almost exclusively outside of Washington or via telephone, email, or facsimile, and the closing occurred in Alaska. Although Mr. Zelener discussed the sale with FTS's manager for one hour while in Seattle for a personal trip, the court is not persuaded that this contact rises to the level of purposeful availment under a practical and pragmatic approach. Further, the purchase of the Leases did not create an ongoing relationship between FTS and either Seventh or Strawberry Hill. In essence, this was a "lone transaction" or a "one shot affair" between the contracting parties with no contemplated future consequences in Washington. *See Boschetto*, 539 F.3d at 1017. Finally, the subject of the Leases is property located in Alaska and the Leases provide that they will be governed by Alaska law.

Lastly, Harbor argues that Strawberry Hill consented to jurisdiction based on the bankruptcy court's approval of the sale. A party may be deemed to have consented to jurisdiction or waived its jurisdictional objections in one suit when it purposefully avails itself of the state courts, including federal courts sitting in the state, in another suit with respect to the same transaction or nucleus of operative facts. *E.g., Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 22-24 (9th Cir. 1991). It does not follow, however, that a party's consent to jurisdiction in one matter necessarily establishes jurisdiction over that party in unrelated matters. Although the bankruptcy court's order provided that the Leases would be "considered current and not in default," and that the bankruptcy court retained jurisdiction to interpret its order, the court is not

persuaded that Strawberry Hill thereby consented to Washington jurisdiction with respect to the present landlord-tenant dispute.

In sum, the court concludes that Harbor has not satisfied its burden under the first prong of the specific jurisdiction analysis.

    *ii.    Arising Out of Washington-Related Activities*

Harbor also has not met its burden in showing that its claims arise out of Strawberry Hill's Washington-related activity. *See Panavision Int'l, LP v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). To determine if the claim asserted in the litigation arises out of the defendant's forum-related activities, the court must consider whether the plaintiff would have been injured "but for" the defendant's conduct directed toward the plaintiff in the forum state. *Id.* at 1322; *Shute*, 783 P.2d at 81. Harbor argues that but for Seventh's purchase of FTS's assets the present dispute would not have arisen. (Resp. (Dkt. # 23) at 18-19.) Although the "but for" test should not be applied narrowly, it is difficult to discern how the present landlord-tenant dispute concerning property located in Alaska can be said to arise out of Strawberry Hill's Washington-related activities. This is not a dispute regarding the sale of FTS's assets; it is a dispute over the terms of the Leases. On this record, the court concludes that Harbor has not satisfied its burden under the second prong of the specific jurisdiction analysis.

    *iii.    Reasonableness of Jurisdiction*

Having determined that Harbor has not met its burden under the first two factors, the court declines to consider whether Strawberry Hill has shown that the exercise of jurisdiction would be reasonable.

*iv. Conclusion*

In sum, the court is not persuaded that Harbor has met its burden in demonstrating that the court may exercise personal jurisdiction over Strawberry Hill. The court therefore grants the motion to dismiss for lack of personal jurisdiction.

**B. Motion for Preliminary Injunction**

In light of the court's determination that it does not have personal jurisdiction over Strawberry Hill, the court cannot reach the merits of Harbor's motion for preliminary injunction. The court therefore denies the motion as moot.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Strawberry Hill's motion to dismiss (Dkt. # 12) for lack of personal jurisdiction. Having made this determination, the court DENIES AS MOOT Harbor's motion for preliminary injunction (Dkt. # 3).

Dated this 9th day of November, 2009.

JAMES L. ROBART
United States District Judge